UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re:  Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf
of Mexico, on April 20, 2010

CIVIL ACTION NO.:  10-7777

SECTION J

JUDGE BARBIER

Applies to:
12-968 and 12-970; cases within
pleading bundles B1 and B3

MAGISTRATE SHUSHAN

OBJECTION TO PROPOSED ECONOMIC CLASS SETTLEMENT OF
VESSELS OF OPPORTUNITY CLAIMS BY RAY GAUDET

NOW INTO COURT, through undersigned counsel, comes Ray Gaudet,[1] who

respectfully submits his Objection to Proposed Economic Class Settlement of the Vessels of

Opportunity ("VoO") Claims.   Considering the following, this Court should find that the

Proposed Economic Class Settlement is unfair and inadequate and, thus, deny Plaintiffs' and BP

Defendants' Joint Motion for Final Approval of *Deepwater Horizon* Economic and Property

Damages Settlement Agreement as amended on May 2, 2012.

I.    LEGAL STANDARD[2]

The Court must be exacting and thorough in analyzing whether the settlement is in the

best interests of class members, *Manual for Complex Litigation (Fourth)* § 21.61 (2004), and

should provide the basis for its conclusions in a reasoned opinion. *See In re Combustion, Inc.,*

968 F.Supp. 1116, 1125 (W.D. La.1997) (stating that a court may not give boilerplate approval

---

[1]    Per the Court's order of May 5, 2012 (Rec. Doc. No. 6418), Ray Gaudet submits that he
is an Economic Class Member.  His address is 4138 Highway 665, Montegut, Louisiana 70377.
His phone number is 985-594-6500.
[2]    Excerpted from *Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 842-43 (E.D. La.
2007) (Fallon, J.).

1

to settlement, but must instead analyze the facts and law supporting its conclusion in a memorandum); *see also In re WireLawsons Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 933 (8th Cir.2005), *cert. denied,* 546 U.S. 822, 126 S.Ct. 356, 163 L.Ed.2d 64. It has been remarked that the district court takes on the role of fiduciary for absent class members, or that of a skeptical client, who critically examines the settlement's terms and implementation. *See Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279-80 (7th Cir.2002); *Georgevich v. Strauss,* 96 F.R.D. 192, 196 (M.D.Pa.1982) ("[T]he Court must vigorously act as guardian of the rights of absentee class members."); 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 1:3 (4th ed.2002); *Manual for Complex Litigation* § 21.61. Indeed, the district court must "exercise the highest degree of vigilance in scrutinizing the proposed settlement." *Reynolds,* 288 F.3d at 279-80.

When evaluating a proposed settlement, the Court must compare its terms with the rewards the class would likely receive following a trial and judgment in its favor. *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977). However, the merits of the case are not at issue during the settlement review process. *Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir.1983). Otherwise, a primary goal of settlement-to avoid the expense and delay of trial-would be thwarted. *See id.* (citing *Young v. Katz,* 447 F.2d 431, 433 (5th Cir.1971)). The Court is also limited in that it may not make unilateral modifications or alterations to the proposed settlement, but rather may only accept or reject the agreement as a whole. *See Evans v. Jeff D.,* 475 U.S. 717, 726-27, 106 S.Ct. 1531, 89 L.Ed.2d 747; *see also* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1797.5 & n. 9 (3d ed.2005); *Manual for Complex Litigation* § 21.61. The Court may not resolve contested issues of fact or law, but

instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation.

Though Rule 23 does not elaborate specific factors necessary for settlement approval, the United States Court of Appeals for the Fifth Circuit has cited six factors that a district court should take into consideration when evaluating a proposed class action settlement. These factors, or "focal facets," include:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the absent class members.

*Reed,* 703 F.2d at 172 (adopting six-factor test cited in prior Fifth Circuit decisions including *Parker,* 667 F.2d at 1209, and *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157 (5th Cir.1978)); *see also In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 217 (5th Cir. Apr.1981).

## II.     ARGUMENT

On or about April 20, 2010, the Deepwater Horizon rig leased by BP America Production Company ("BP") exploded off the coast of Louisiana releasing mass quantities of oil into the Gulf of Mexico. BP chartered qualifying fishing boats and vessels under the "Vessels of Opportunity Program" to aid and assist it in cleaning up the oil spill catastrophe. Gaudet and his vessel # LA-3066-BW met the Vessels of Opportunity qualifications, and Gaudet entered into a Vessel Charter Agreement (the "Charter") with Lawson Environmental Services, L.L.C. ("Lawson") on June 28, 2010. *See* Exhibit A. The Charter provided that Gaudet would provide Lawson with the exclusive use of the vessel # LA-3066-BW and its crew in oil spill response activities on behalf of BP under the Vessels of Opportunity Program.

However, Gaudet, like others, did not receive many days of work because of a racially discriminatory policy of BP.  *See* Second Supplemental and Amending Complaint, attached hereto as Exhibit B.[3] Upon information and belief, neither BP, nor any of its contractors, had an equal opportunity policy in place for participation in the VOO program.

In the Pointe Aux Chenes, Louisiana community, Lawson was responsible for contracting with locals to participate in the VoO Program.  Because Pointe Aux Chenes has a certain concentration of Native Americans, BP purposefully selected this community as one in which Native Americans would receive preferential treatment in the VoO Program, despite the fact that there are Native American fisherman throughout South Louisiana. As a result, certain white boat captains and crew members who worked and/or lived in or close to Pointe Aux Chenes, and would have been otherwise be eligible to participate in the VOO Program as vessel owners and/or crew members, were systematically and intentionally excluded from participating in the VoO Program because of their race.  Gaudet is a non-minority who was purposefully excluded from full participation in the VoO Program because of his race.

Specifically, and on multiple occasions, Gaudet, after completing the requisite safety and hazard training, enrolled his vessel for clean-up work in the VoO program.  Plaintiff did not receive much work at all.  On the other hand, many Pointe Aux Chenes Indians received many more days of work and, often enough, even had multiple vessels in operation.   Gaudet also specifically complained to BP officials, to no avail, that they were being excluded because of his race, as he was not Pointe Aux Chenes Indian.  Upon information and belief, this intentionally discriminatory policy was administered by Lawson at the direction of BP.

---

[3]     This action was stayed pursuant to the Judge Wilkinson's order on July 12, 2012.   This Court stayed a similar action on July 11, 2012 (MDL No. 2179, Rec. Doc. No. 6888).  Thus, no discovery has taken place involving claims of racial discrimination against BP.

Gaudet and others filed a class action complaint alleging that BP purposefully employed a racially discriminatory policy in its implementation of the VoO program in violation of 42 U.S.C. § 1981. Class members included minorities and non-minorities who were excluded from participation because of BP's racially discriminatory policy.

The Proposed Economic and Property Damages Settlement Agreement ("EPDSA") purports to settle all claims arising out of the VoO program (other than personal injury/medical claims). The EPDSA proposes that "Working VoO Participants" will receive twenty-six days of compensation depending on vessel size while "Non-Working VoO Participants" will receive a one-time payment ranging from $4,800 to $10,200 depending on vessel size. Ostensibly, the VoO negotiations and ultimate settlement centered around the contractual claim of the class plaintiffs that they were entitled to compensation under their respective charter agreements with BP for the entire charter term and not merely for days worked. The EPDSA does not concern allegations made in multiple class actions that BP employed a purposefully discriminatory racial policy in implementing the VoO program. Moreover, no discovery on these issues has taken place by virtue of the stay orders issued by this Court and Magistrate Judge Wilkinson.

Gaudet, like others who were discriminated against by BP and its subcontractors, will have to release his section 1981 discrimination claim to participate in the EPDSA to any extent, including participation in the seafood compensation program. This is patently unfair as it will require Gaudet, and countless others, to give BP a pass on the discrimination in order to receive what they are clearly owed as evidenced by the EPDSA. This unfairness further extends to those "Non-Working VoO Participants" who were completely excluded from the VoO program because of BP's intentionally discriminatory policy.

Moreover, the amount of the VoO settlement is inadequate taking into consideration damages available under section 1981. That is, though BP is receiving a release of the section 1981 claims with the EPDSA, it is offering only a partial contractual payment though its exposure includes punitive damages and attorney fees.[4] The inadequacy of the VoO settlement is especially true for those "Non-Working VoO Participants," who will receive relatively very little in exchange for a release, though many were excluded from participation because of their race. Approval of the EPDSA will lead to substantial injustice for the many individuals who suffered real discrimination and are not in a position to bring a lawsuit individually and are unaware of their legal rights under section 1981.

Thus, this Court should find that the VoO settlement is unfair and inadequate and deny Plaintiffs' and BP Defendants' Joint Motion for Final Approval of *Deepwater Horizon* Economic and Property Damages Settlement Agreement as amended on May 2, 2012.

Respectfully submitted,

**SANGISETTY & SAMUELS, L.L.C.**

By:  */s/Ravi K. Sangisetty*
        Ravi K. Sangisetty (#30709)
        610 Baronne Street, Third Floor
        New Orleans, Louisiana  70113
        Telephone:  (504) 558-9478
        Facsimile: (504) 558-9482
        rks@sangisettylaw.com

COUNSEL FOR PLAINTIFF, RAY D. GAUDET

---

[4]     Gaudet, only worked for approximately 10-12 days under the VoO program and was denied the opportunity to work more because of his race. It is proposed that he will be paid under the EPDSA for an additional 26 days like the other VoO contract claimants. However, in exchange for the payment he must forego his section 1981 claim.

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2012, I electronically filed the foregoing Objection with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.  I also herby certify that pursuant to the Court's Order of May 2, 2012 (Rec. Doc. No. 6418), service of the foregoing pleading was sent via first class mail to the following counsel:


James P. Roy
Domengeaux, Wright, Roy & Edwards
POB 3668
556 Jefferson Street
Lafayette, LA 70502-3668
Attorney for Plaintiff


Stephen J. Herman
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Attorney for Plaintiff

Timothy A. Duffy
Kirkland & Ellis, LLP
300 N. LaSalle
Chicago, IL 60654
Attorney for Defendant


_____ */s/Ravi K. Sangisetty*_____
RAVI K. SANGISETTY

7